IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WARREN T. WADE,

      Plaintiff,

v.                                 CIVIL ACTION NO. 2:12cv86
                                   (Judge Bailey)

JAMES SPENCER, Administrator,
J. Winslow, Correctional Officer,
M. Covey, Correctional Officer,

      Defendants.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On December 12, 2012, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants.(Doc. 1) On December 20, 2012, the plaintiff was granted leave to proceed *in forma pauperis* (Doc. 9) , and on January 7, 2013, he paid the required initial partial filing fee. (Doc. 11). On April 5, 2013, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and twenty-one (21) day summonses were issued for service by the United States Marshal.(Docs. 18 & 19). On April 16, 2013, the summonses were returned indicating that each defendant had been served on April 11, 2013. (Docs. 21-23). On July 22, 2013, the plaintiff filed a Motion for Default Judgment. (Doc. 30). The Clerk entered a Default Judgment on August 9, 2013. (Doc. 31). On August 13, 2013, the defendants filed a Motion to Set Aside Default. (Doc. 33). On August 14, 2013, an Order was entered granting said Motion. (Doc. 35). On August 26, 2013, the defendants filed their First Motion to

1

Dismiss.(Doc. 37). A Roseboro Notice was entered on August 27, 2013. (Doc. 38). On September 11, 2013, the plaintiff filed a Response. (Doc. 43). The defendants filed a Reply on September 23, 2013 (Doc. 43), and the plaintiff filed a reply memorandum on October 3, 2013. (Doc. 44). In addition, the plaintiff filed a Motion for an Extension To Serve the Defendants. (Doc. 45).

## II. THE PLEADINGS

### A. The Complaint

In his complaint, the plaintiff alleges that while he was incarcerated in the Northern Regional Jail, he was attacked by another inmate on August 12, 2012. The plaintiff indicates that he was struck two times in the left eye with a broom handle. The plaintiff maintains that the inmate who attacked him, Alex James, was known to have a violent nature because he and two other inmates had beaten another inmate seriously enough on June 2, 2011, to require the victim's hospitalization in the intensive care unit. The plaintiff alleges that the defendants failed to protect other inmates by allowing Alex James back into the general population. In addition, the plaintiff alleges that his particular injuries were precipitated by defendant M. Corey's, use of improper procedures in handing out food trays. Finally, the plaintiff alleges that his injuries were also caused by defendant J.Winslow's refusal to remove him from the situation upon his verbal request. For relief, the plaintiff seeks 1.5 million dollars and care for his eye for the rest of his life.

### B. The Defendants' Motion

In response to the complaint, the defendant asserts that the plaintiff's complaint should be dismissed for the following reasons:

2

(1) Defendants Winslow and Corey have not received sufficient service of process.

(2) Plaintiff's claims against defendant Spencer fail to state a viable claim.

(3) The plaintiff failed to exhaust his administrative remedies.

(4) Defendants are entitled to qualified immunity.

(5) Any claim against defendant Spencer based upon respondeat superior must fail as a matter of law.

## C. Plaintiff's Response

In his response, the plaintiff argues that defendant Spencer was the supervisor of defendants M. Corey and J. Winslow and signed the Service of Process for them. Therefore, the plaintiff appears to argue that service of process has been accomplished. The plaintiff also argues that the grievance process "did not work at the Northern Regional Jail because Mr James Spencer did not perform his employment duties." (Doc. 2, p.1). In addition, the plaintiff contends that had defendant M. Corey passed out the food trays one at a time, there would never have been and argument. Finally, the plaintiff argues that had defendant J. Winslow done his job the evening of August 11, 2012, by diffusing the problem, the assault the next morning would not have happened. Specifically, the plaintiff indicates that he requested three times on the evening of August 11, 2012, to be moved to another housing unit.

## D. Defendant's Reply

In their reply, the defendants reiterate their arguments for dismissal. First, that Officers Winslow and Corey have not been properly served because Mr. Spencer was not authorized to accept service on their behalf. Second, that defendants Corey and Winslow were performing discretionary functions, and are therefore, immune from liability in connection with the plaintiff's complaint. Specifically, the defendants argue that the decision on how to hand out

3

food trays is certainly discretionary in nature as is the decision regarding the plaintiff's housing after the argument between inmate James and him. The defendants also reiterate their claim that the plaintiff failed to exhaust his administrative remedies. Finally, the defendants again argue that there is no allegation, let alone evidence, that the plaintiff's injuries were proximately caused by any action or inaction of Mr. Spencer.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions"

4

or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

## IV. ANALYSIS

### A. Administrator James Spencer

There is no dispute that Mr. Spencer was properly served. However, this defendant is due to be dismissed because the complaint fails to state an actionable claim against him.

There is no *respondeat superior* liability under § 1983. See Monnell v. Department of Social Services, 436 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. Nonetheless, when a

supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[1]

Because the plaintiff fails to allege any personal involvement on the part of this defendant[2] and does not make any allegations which reveal the presence of the required elements for supervisory liability, plaintiff fails to state a claim against Administrator Spencer, and the Motion to Dismiss as it relates to him should be granted.

**B. Service of Process**

As one ground for dismissing that action against correctional officers J. Winslow and M. Covey, the defendants contend they were not properly served, and accordingly, the claims against

---

[1] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

[2] To the extent that the plaintiff may be asserting that Mr. Spencer was deliberately indifferent to his needs by "ignoring" administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

6

them should be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure ("FRCP"). Rule 4(e) of the FRCP sets forth the procedure for accomplishing service on individuals within a judicial district of the United States:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district in the state where the district court is located or where service is made by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>    (A) delivering a copy of the summons and of the complaint to the individual personally;
>    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

In the instant case, the plaintiff was granted leave to proceed *in forma pauperis*, and accordingly, the United States Marshal Service was directed to serve the defendants. (Doc. 18, p.2). The Process Receipt and Return for both J. Winslow and M. Corey were returned on April 16, 2013, and indicated that the Deputy Marshal personally served each defendant. However, that service was accomplished by delivering the documents to James Spencer, "a person of suitable age and discretion then residing in defendant's usual place of abode." (Docs. 22 and 23).

Clearly, the Northern Regional Jail is not the usual place of abode for either J. Winslow or M. Corey. Moreover, James Spencer is not an agent authorized by appointment or by law to receive service of process for either of these defendants. Therefore, J. Winslow and M. Corey were not properly served within 120 days of the filing of the complaint. However, the undersigned believes it would be inappropriate to grant the defendants' Motion To Dismiss J. Winslow and M. Corey on the basis of insufficient service of process in light of the fact that the plaintiff had no

control over the United States Marshal Service. Instead, should the Court conclude that there is no other basis for dismissing J. Winslow or M Corey, the undersigned would recommend that the United States Marshal Service be directed to serve these two individuals in person, by delivering the summons and complaint to these individuals as set forth in Rule 4(e) of the FRCP as set forth above.

**C. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act of 1995 (PLRA), prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). In Jones v. Brock, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints," nor do they have the burden of proving it. 549 U.S. 199, 216 (2007) see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Further, the Court has hld that "proper exhaustion" is required, meaning that the inmate must follow the prison's administrative rules as required, including when and how to file the complaint. See Woodford v. Ngo, 548 U.S. 81 (2006).

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other

8

administrative procedures exist that have not been utilized.  If the grievance is rejected, the Administrator must advise the inmate of the rejection.  If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint.  Such staff is then required to submit a written report within forty-eight (48) hours.  Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision.  If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision.  Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days.  The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days.  Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance.  If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response.  To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto.  The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information.  Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process.  The grievance process must be concluded within 60 days, inclusive of any extensions.

Although the burden is not on the plaintiff to plead exhaustion, the § 1983 form complaint of this Court that is given to inmates asks if the inmate followed the grievance procedure, and to attach grievances and responses. The plaintiff stated in his complaint that he exhausted his administrative grievance, but his grievances went unanswered. He did not, however attach any grievances.

In support of their Motion to Dismiss, the defendants have attached an Affidavit from Lt David Simmons, Acting Administrator for the Northern Regional Jail which is dated August 8, 2013. In it, Lt. Simmons indicates that he reviewed the plaintiff's Inmate Correspondence and Grievance Appeal file and found that it did not contain any inmate grievance or appeal relating to the events alleged in the complaint. (Doc. 34-1, p. 1).

In his reply, the plaintiff has attached what appears to be a grievance directed to Administrator James Spencer, dated August 14, 2012, relating to an incident on August 11, 2012. Because it is a copy, it is difficult, if not impossible to read.[3] In addition, the plaintiff has attached correspondence to and from Paul O'Dell and Randall Mann, both apparently employed by the West Virginia Regional Jail and Correctional Facility Authority. Although not related to the events raised in the complaint, the plaintiff indicates in the body of those letters or with handwritten notes on the responses that there is no grievance procedure to follow and/or he has filed grievances and received no response.

Section 1997e(a) provides that prisoners are required to exhaust "such administrative

---

[3]Based on correspondence that the plaintiff apparently sent to someone at the WV Regional Jail and Correctional Facility, it appears that the grievance was not concerning the attack on him by another inmate, but instead concerned his being written up for fighting and creating a disturbance for which he received ten days in the "hole" plus five days loss of privileges.(Doc. 42-5, p.2).

remedies as are available." and courts have consistently held that "administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Moore, 517 F.3d at 725. Further, courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Allevaleda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see also Kaba v. Stepp, 458 F.3d 678, 684 (th Cir. 2006)("[W]hen prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'") (citations omitted); Brown v. Croak, 312 F.3d 109, 111-12 (3d Cir. 2002), (holding that administrative remedies were unavailable where the prison officials erroneously told the prisoner that he must wait until the investigation was complete before filing a grievance).

In this particular case, the plaintiff initially alleged that he had utilized the grievance procedure, but his grievances went unanswered. In response to the Motion to Dismiss, the plaintiff attaches documents which it appears are intended to demonstrate that he was effectively barred from exhausting his remedies. However, what his exhibits actually demonstrate is that he fails to follow the proper procedure for exhaustion. Instead of filing the second level with the Chief of Operations, he appears to either complain to personnel at the office of the West Virginia Regional Jail Authority or do nothing. Moreover, although the plaintiff complains that his administrative grievances go unanswered by the jail administrator, the grievance process clearly provides that "unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process." The defendants have supplied an affidavit that establishes that the plaintiff never filed an appeal of a grievance

11

involving the allegations in this complaint. The plaintiff has not refuted that affidavit, and accordingly, the undersigned believes that the plaintiff's complaint, as it relates to J. Winslow and M. Covey could be dismissed without prejudice for failure to exhaust administrative remedies. However, even if the Court finds that the administrative remedy process was somehow unavailable to the plaintiff, defendants J. Winslow and M. Covey should be dismissed for the reasons discussed below.

D. **Discretionary Function**

As an alternative basis for dismissing the complaint against J. Winslow and M. Corey, the defendants allege that as government officials, they are immune from liability in connection with the performance of discretionary functions. With respect to M. Corey, the discretionary function alleged is passing out food trays. With respect to J. Winslow, the discretionary function alleged is housing assignments.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Pernell, 652 F.3d 524, 531 (4th Cir. 2011)(*en banc*)(citing Saucier v. Katz, 533 U.S. 194, 206 (2001) *overruled in part by* Pearson v. Callahan, 555 U.S. 223 92009). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 206. If the Court determines that the facts alleged, taken in the light most favorable to the plaintiff, do not show that the officer's conduct violated a constitutional right, then the defendants are entitled to summary judgment.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from

12

violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id.at 837. Furthermore, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence, the plaintiff must show that the defendants knew of the risk and consciously disregarded it. Whitley v. Albers, 475 U.S. 312. 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991).

The defendants do not dispute that the plaintiff was assaulted by another inmate on August 12, 2012. However, the record does not demonstrate that the defendants knew of a substantial risk to the plaintiff's safety. In arguing otherwise, the plaintiff alleges that Alex James, the inmate who assaulted him, had demonstrated his violent nature on June 2, 2011, on the A-1 pod[4] when he and two other inmates beat a fellow inmate. However, violence by a

---

[4]It is not clear whether the incident involving the plaintiff also took place on the A-1 pod. The plaintiff indicates that J. Winslow failed to inform the shift supervisor of a problem on B-5.

particular inmate does not necessarily establish that said inmate will assault again. In addition, to the extent that the plaintiff alleges that defendant M. Corey caused the assault by using improper procedures in passing out the food trays, the plaintiff sets forth no discernable basis by which M. Corey could have anticipated that a dispute over evening food trays would have initiated an assault in the early hours of the next morning. In addition, with respect to defendant J. Winslow, the plaintiff alleges that he told him that Alex James and another inmate kicked his door shut two times and told him to leave the pod. The plaintiff maintains that despite this information, defendant J. Winslow refused to do anything about it. Again, nothing in the behavior exhibited by Alex James demonstrates that J. Winslow should have known that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measure to abate it.

Accordingly, construing the pleadings in the light most favorable to the plaintiff, the undersigned concludes that dismissal based on qualified immunity should be granted to the defendants Winslow and Corey because the plaintiff has not sufficiently alleged facts that overcome the burden required to state a deliberate indifference claim.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the defendant's Motion to Dismiss (Doc. 37) be **GRANTED**, and the complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. In addition, for the reasons set forth in their Memorandum in Support of Motion to Set Aside Entry of Default, the undersigned recommends that the plaintiff's Motion for Default Judgment (Doc. 30) be **DENIED**. Finally,

---

(Doc. 1, p.8).

the undersigned recommends that the plaintiff's Motion for Extension to Serve (Doc. 45) be **DENIED AS MOOT.**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide a copy to all counsel of record via electronic means.

DATED: December 12, 2013.

                                            /s/ James E. Seibert
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE